IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RADEE LABEEB PRINCE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1219 (MN) |
| | ) | |
| BRIAN EMIG, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION</u>

Radee Labeeb Prince – *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.

September 4, 2025
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Petitioner Radee Labeeb Prince ("Petitioner") filed a Petition and an Amended Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (D.I. 3; D.I. 8). Respondents Brian Emig and The Attorney General of the State of Delaware (collectively referred to as "The State") filed an Answer, to which Petitioner filed a Reply and an Amended Reply. (D.I. 19; D.I. 26; D.I. 27). For the foregoing reasons, the Court denies the Petition.

## I.    BACKGROUND

### A.    Factual Background

In its Order on direct appeal, the Supreme Court of Delaware summarized the evidence presented at trial as follows:

> [O]n October 18, 2017, Rashan Baul (also known as Jason Baul) was meeting with Cort Hughes at Baul's auto-sales business when Prince entered the building, opened the door to the small office where Baul and Hughes were meeting, and shot Baul.
>
> A bullet initially struck Baul in the face and lodged in his spine. Prince backed out of the office and stood outside the door, attempting to clear a jam in the gun. Baul struggled on the floor of the office, pushing the desk against the door. Prince then forcefully opened the door and fired again. Prince left the building, but then returned, pushed open the office door again, and fired again. At least one additional shot hit Baul and lodged in his pelvic area. As Baul and Prince struggled near the door to the office, Hughes managed to escape and fled the building. Prince then left the scene, saying "bleed out, bitch." Baul crawled to the door of the building and called for help. As his employees came to his aid, Baul reported that Prince, whom he had known for many years, was the shooter.
>
> Ebony Wilson, one of Baul's employees, also identified Prince as the shooter. She had known Prince since childhood. On the morning of the shooting, Wilson was walking toward the building after collecting some information from cars on the lot when she saw Prince. They greeted each other by name, and Prince asked her if Baul was inside. She said that she did not know. Prince then entered the building, and Wilson saw him pull out a gun. She ran to warn another employee, and then heard a shot. She and the other employee fled. When Wilson saw a police car approaching, she ran

back toward the building and saw Baul lying in the doorway. Emergency personnel transported Baul to the hospital, where he was treated for his injuries and survived, although he required extensive follow-up treatment and suffered long-term effects from his wounds.

Video footage from surveillance cameras located in and around the building also showed Prince arriving on the scene and shooting into the office. Other evidence confirmed that Prince drove from Maryland to Delaware shortly before the shooting, purchased ammunition from a Wal-Mart store, exchanged that ammunition for a different type, and then proceeded to Baul's auto lot.

Prince did not contend at trial that he was not the shooter. Rather, his defense was that he had learned that Baul had hired someone to kill him, and that he therefore shot Baul in self-defense or under extreme emotional distress. The defense centered on evidence of a build-up of tension between Prince and Baul, beginning around the time that Baul testified in a criminal trial against Prince's brother, Aaron Bruton, who was also Baul's best friend. Prince testified that he had called Baul a rat, and that Baul had then hired some people to assault him outside of a nightclub, as a result of which Prince had a broken back and a severe laceration to his forehead, and was placed in a medically induced coma.

Prince and Baul also testified about an incident that occurred in January 2016, after Bruton was released from prison. Bruton, Baul, and Prince were at the home of Prince's father, and Baul and Prince got into a fight. The testimony regarding the reason for the fight and what happened next differed somewhat, but it is clear that at some point Baul and Prince left the house and Baul drove a truck into Prince. Baul was going to testify in a criminal case against Prince in connection with that incident, but the case was ultimately dismissed.

Prince, his sister, his niece, and a family friend also testified that in May 2016, as Baul and Prince were leaving Prince's father's funeral, Baul took a gun out of the console of his car and aimed it at Prince's face. Baul denied having a gun at the funeral.

Prince further testified that in 2016 he heard that Baul had offered $10,000 to have Prince killed. Prince said that he moved to Elkton, Maryland, so that Baul would not know where to find him. He testified that on the Saturday before the shooting, he saw someone who knew Baul standing outside a neighbor's house and became fearful that Baul would learn where he lived. He therefore decided to go to Baul's business to talk to him, but said that when he walked

into the office, Baul reached toward his pocket—Prince believed to reach for a gun—and Prince opened fire.

To rebut Prince's position that his past interactions with Baul supported a finding of self-defense or extreme emotional distress, the State sought to introduce evidence that on the morning of October 18, 2017, before going to Baul's business, Prince shot and killed three people and injured others at his workplace in Edgewood, Maryland. The State argued that Prince had put his state of mind at issue, and that the probative value of the evidence of the Maryland shooting was sufficient to overcome its prejudicial nature. The Superior Court weighed the highly prejudicial nature of the evidence against its conclusion that the evidence was also highly probative of Prince's state of mind, and held that the evidence was admissible under D.R.E. 403. The court also then performed an analysis under D.R.E. 404(b) and *Getz v. State* and ruled that the evidence was admissible under that analysis as well.

The State then questioned Prince about the Maryland shooting. Prince asserted his Fifth Amendment privilege. After the defense rested, the State introduced evidence of the Maryland shooting, including a video of the incident; the ensuing manhunt; and Prince's arrest later that evening in Newark, Delaware, by agents of the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF"), which involved a brief foot chase during which Prince discarded a gun.

Several key instructions were given to the jury. First, the jury received an instruction on self-defense as to the attempted murder charge against Prince. Second, the court instructed the jury on the lesser-included offense of attempted manslaughter under extreme emotional distress. Finally, the court instructed the jury that it could use the evidence of the Maryland shooting only for the purpose of determining Prince's state of mind as to the Baul shooting, and not for any other purpose.

The jury found Prince not guilty of Attempted Murder and guilty of the lesser-included offense of Attempted Manslaughter Under Extreme Emotional Distress. The jury also found Prince guilty of Reckless Endangering First Degree, Carrying a Concealed Deadly Weapon, Resisting Arrest, and two counts of Possession of a Firearm During the Commission of a Felony.

*Prince v. State*, No. 351, 2018, 2019 WL 3383880, at *1-2 (Del. July 25, 2019) (footnotes omitted)

(cleaned up).

### B.    Procedural Background

The Delaware Superior Court sentenced Petitioner to a total of forty years of unsuspended time in prison, followed by probation. *Id.* at *1. Petitioner was represented by counsel before and during trial but elected to proceed *pro se* on direct appeal. *Id.* at *3. On direct appeal, the Delaware Supreme Court affirmed the judgment of the Superior Court. *Id.* at *14. Petitioner then filed an initial and an amended Rule 61 Motion for Postconviction Relief (collectively "Rule 61 Motion"), which was denied by the Delaware Superior Court. *See State v. Prince*, No. 1710010993A, 2022 WL 211704, at *11 (Del. Super. Ct. Jan. 24, 2022) (D.I. 17-26 at 294-333; D.I. 17-26 at 267-293). The Delaware Supreme Court thereafter affirmed the denial. *See Prince v. State*, No. 35, 2022, 2022 WL 4126669 (Del. Sept. 9, 2022). Petitioner subsequently filed the Petition currently pending before this Court.

## II.    GOVERNING LEGAL PRINCIPLES

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

B.    **Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts
> of the State; or
>
> (B)(i)   there is an absence of available State corrective process; or
>      (ii)  exist that render such process ineffective to protect the rights
>      of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give

"state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *Werts*

*v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by

demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on

direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to

consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v.*

*Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as

"technically exhausted," if state procedural rules preclude him from seeking further relief in state

courts.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the

technical requirements for exhaustion" because state remedies are no longer available); *see also*

*Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See Coleman,* 501 U.S. at 750-51; *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See id.* at 494 (internal quotations omitted).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *id.* at 496, then a federal court can excuse the procedural default and review the claim to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting

"new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

## C.    Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[1]  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

---

[1]    A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## III.    DISCUSSION

Petitioner's timely Petition seeks relief on the following grounds: (1) the prosecution knowingly presented perjured testimony and failed to correct it (D.I. 3 at 6-7; D.I. 8 at 6-12; D.I. 27 at 13-32); (2) the prosecution lied to the jury about being in possession or having personal knowledge of material facts (D.I. 3 at 7-10; D.I. 8 at 12-17; D.I. 27 at 33-39); (3) ineffective

assistance of trial counsel for failing to object to the admittance of the Delaware shooting video (D.I. 3 at 11-13; D.I. 8 at 17-20; D.I. 27 at 40-45); (4) ineffective assistance of trial counsel for failing to object to the sentencing memorandum provided by the State (D.I. 3 at 13-14; D.I. 8 at 20-23; D.I. 27 at 46-50); (5) the trial court erred in permitting the prosecution to present evidence of Petitioner's dismissed charges and alleged threatening behavior from at least two years prior but denied Petitioner the opportunity to present other witnesses or evidence to rebut the aforementioned testimony without first testifying in his own defense (D.I. 3 at 15-19; D.I. 8 at 23-28; D.I. 27 at 51-61); and (6) cumulative error (D.I. 8 at 28-29; D.I. 27 at 62).

### A.    Claim One: The Prosecution Knowingly Presented Perjured Testimony and Failed to Correct It

On direct appeal, Petitioner raised the issue of prosecutorial misconduct, claiming that the prosecution knowingly presented perjured testimony.  (D.I. 17-26 at 181-197).  Finding that no objection was made on these grounds during trial, the Delaware Supreme Court applied Delaware Supreme Court Rule 8 and reviewed this prosecutorial misconduct claim for plain error.  *See Prince,* 2019 WL 3383880 at *11.  Rule 8 states that "[o]nly questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."  Del. Sup. Ct. R. 8.  The Delaware Supreme Court's application of the procedural bar of Rule 8 is a "plain statement" that its decision rested on state law grounds. *See Harris*, 489 U.S. at 263-64; *Morgan v. Pierce*, 83 F. Supp. 3d 563, 569 (D. Del. 2015).  Accordingly, Rule 8 provides an independent and adequate state ground which forecloses federal habeas review absent of showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed. *See Campbell v. Burris*, 515 F.3d 172, 182 (3d 2008); *Morgan*, 83 F. Supp. 3d at 569.

In his Petition, Petitioner does not allege any cause for his procedural default of Claim One. In his Traverse of Respondent's Answer to the Petition for Writ of Habeas Corpus filed July 6, 2023 ("Amended Reply"), Petitioner states that this claim "was reviewed under plain error because trial counsel failed to object in Superior Court." (D.I. 27 at 13). The Court does not find that Petitioner has articulated a ground for cause. Even liberally construing Petitioner's statement to allege ineffective assistance of counsel as cause for the default, such a claim nonetheless fails. An attorney's error can only constitute cause for a procedural default if the petitioner first presented that ineffective assistance of counsel claim to the state courts as an independent claim and it was determined that the attorney's error amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89. Although Petitioner made ineffective assistance claims on other grounds, he did not previously present such a claim on the ground that trial counsel failed to object to the prosecution knowingly presenting false testimony and failing to correct such testimony. (D.I. 17-26 at 317-25; D.I. 17-24 at 7, 11-19; D.I. 17-27 at 4-10; D.I. 17-23 at 6; D.I. 17-28 at 3). Therefore, such a claim cannot be considered cause for Petitioner's procedural default of Claim One.

In the absence of cause, the Court will not address the issue of prejudice. Furthermore, the miscarriage of justice exception to the procedural default doctrine is inapplicable because Petitioner has not provided any new reliable evidence of his actual innocence.[2] Accordingly, the Court denies Claim One as procedurally barred.

---

[2]    The Court notes that Petitioner requested, and was permitted, to supplement his Petition with the Affidavit of Tyerin Griffin ("Affidavit") and with photographs of Baul and the owner of a car dealership. (D.I. 16; D.I. 28; D.I. 29; D.I. 30). The Affidavit pertains to the 2014 incident in which Petitioner claims Baul had hired people to assault him. The photographs pertain to Baul's familiarity with a man who allegedly told Baul where Petitioner lived. Petitioner asserts that the statements in the Affidavit and the pictures are

**B.  Claim Two: The Prosecution Lied to the Jury about being in Possession or Having Personal Knowledge of Material Facts**

Within his second claim, Petitioner alleges that the prosecution lied to the jury about being in possession of or having personal knowledge of material facts. This claim revolves around Petitioner's assertion that the prosecution hid or denied the existence of information discovered during the investigation of the shooting. In his Petition and Amended Reply, Petitioner sets forth the following grounds to support this claim: (1) the prosecution objected to a line of questioning during the cross examination of Baul relating to prior incidents between Baul and Petitioner and then, at sidebar, stated that it would request a curative instruction if no evidence was produced to support the questioning, despite the prosecution being aware of the existence of investigative statements supporting the line of questioning;[3] (2) the prosecution, during cross-examination of Petitioner regarding whether Baul pulled out a gun at a funeral, suggested Petitioner was lying about the existence of Aaron Bruton's statement that Baul did pull a gun out; (3) the prosecution's theory that the ongoing dispute between Petitioner and Baul arose from a job dispute was a "deliberate misrepresentation;" (4) during cross-examination of Petitioner, the prosecution claimed he could not name a witness to support his claim that Baul had a plot to kill Petitioner when the police had a recorded statement from Matt Burns supporting that claim; (5) the prosecution cross-examined Petitioner about whether he reported a prior incident to the police despite his claim that the prosecution was aware of a police report related to that incident; and (6) the prosecution, in its closing, suggested that the murder for hire plot was fabricated as a last-

---

further proof that Baul committed purgery. (D.I. 16 at 1; D.I. 27 at 32; D.I. 30). Neither one, however, demonstrate actual innocence. Petitioner does not deny shooting the victim.

[3]  The Court notes that it does not appear that ground 1 was asserted at any point in the state proceedings. Thus, the issue is considered technically exhausted, but procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749.

minute defense despite being aware of witnesses that supported this theory prior to trial. (D.I. 3 at 7-10; D.I. 8 at 12-17; D.I. 27 at 33-39).

On direct appeal, Petitioner listed seven grounds of prosecutorial misconduct in the "Questions Presented" section of his brief, including "[b]y lying to the jury about being in possession of or having knowledge of material fact." (D.I. 17-26 at 181). In the Argument section of the brief, the seven grounds were not clearly identified nor was there much clarity provided as to what arguments were intended to support which of those seven grounds. (D.I. 17-26 at 182-97). Nonetheless, the Delaware Supreme Court made a valiant effort to decipher and address each of the issues presented by Petitioner. *See Prince*, 2019 WL 3383880, at *11. The Supreme Court regrouped and categorized the issues presented by Petitioner to make them more accurately align with the arguments presented. *See id*; *see also* D.I. 17-26 at 181-97. To the extent that the issues presented herein in Claim Two were sufficiently raised on direct appeal, it appears that those claims were incorporated into the claims as categorized by the Supreme Court. The arguments made within Claim Two are especially aligned with the issues that the Supreme Court identified as claims that the prosecutor "knowingly presented perjured testimony," "engaged in improper vouching," and "introduced inadmissible evidence, including hearsay." *See Prince*, 2019 WL 3383880, at *11-13.

First and foremost, this Court notes that the Delaware Supreme Court found that Petitioner did not make any objections to any of the alleged prosecutorial misconduct at trial and, therefore, applied Rule 8 and reviewed for plain error. *See Prince*, 2019 WL 3383880, at *11. The Supreme Court directly addressed grounds 3 and 6. *See id.* at *6, 12-13. Although not explicitly addressed, grounds 2, 4, and 5 herein are closely related to Petitioner's argument that the prosecution "knowingly presented perjured testimony," which was addressed. *See id.* at *11. Petitioner

himself intertwines these issues by repeatedly asserting within Claim Two that Baul lied, which is the underlying basis for his claims below as well as Claim One herein.  To the extent that these claims were not addressed on direct appeal, Petitioner referenced grounds 2, 4, and 5 herein in his Rule 61 Motion.[4]  (D.I. 17-26 at 310-312).  In its ruling on that motion, the Delaware Superior Court found Petitioner's prosecutorial misconduct claims were procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) or (4).[5]  *See Prince,* 2022 WL 211704, at \*3-5. On appeal, the Delaware Supreme Court agreed.  *See Prince*, *2022* WL 4126669, at \*4.

Both Rule 8 and Rule 61 are independent and adequate state procedural rules precluding federal habeas review.  *See Campbell*, 515 F.3d at 182 (holding that Delaware Supreme Court Rule 8 "provides an independent and adequate state ground which forecloses federal habeas review"); *Monroe v. Phelps*, 825 F. Supp. 2d 520, 535 (D. Del. 2011) (stating "this court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review").  Therefore, as with Claim One, federal habeas review is foreclosed absent

---

[4]     The Court notes that, in that Motion, those references are again closely tied to allegations of Baul lying.

[5]     Delaware Superior Court Criminal Rule 61, in pertinent part, provides:

> (i) Bars to Relief.
>
> …
>
> (3) *Procedural default.* Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows
> (A) Cause for relief from the procedural default and
> (B) Prejudice from violation of the movant's rights.
> (4) *Former adjudication.* Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred.

Del. Super. Ct. Crim. R. 61.

of showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed. *See Campbell*, 515 F.3d at 182; *Morgan*, 83 F. Supp. 3d at 569. Petitioner has not asserted any cause for his procedural default of Claim Two. In the absence of cause, the Court will not address the issue of prejudice. Moreover, the miscarriage of justice exception is inapplicable because Petitioner has not provided any new reliable evidence of his actual innocence. Accordingly, the Court denies Claim Two as procedurally barred.

### C.     Claims Three and Four: Ineffective Assistance of Counsel

In both Claim Three and Claim Four, Petitioner raises claims for ineffective assistance of trial counsel. The clearly established Supreme Court precedent governing ineffective assistance of trial counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). When performing the second prong of the § 2254(d)(1) inquiry, the Court must review the Delaware Supreme Court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[6] *See Richter*, 562 U.S. at 105. Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so

---

[6]     As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

### 1. Claim Three: Ineffective Assistance of Counsel for Failing to Object to the Admission of the Video of the Delaware Shooting

In Claim Three, Petitioner contends that trial counsel provided ineffective assistance for failing to object to the admission of the Delaware shooting video on the basis that the video shown at trial differed from the version that the defense obtained in discovery. (D.I. 3 at 11-13; D.I. 8 at 17-20; D.I. 27 at 40-45). The crux of Petitioner's claim is that the video was edited, making it appear that he fired two shots when he first entered Baul's office, instead of one, resulting in a total of 4 shots instead of 3.[7] Petitioner presented Claim Three to the Superior Court in his Rule 61 Motion, and appealed the Superior Court's denial of the claim on the merits. *See Prince*, 2022 WL 211704, at *9. The Delaware Supreme Court agreed and affirmed. *See Prince*, 2022 WL 4126669, at *2, 5. Therefore, Petitioner will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

In this case, the Delaware Supreme Court decision was not contrary to clearly established federal law because that court correctly identified the *Strickland* standard applicable to ineffective assistance of trial counsel claims. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). Next, the Court must

---

[7]    The Court notes that Petitioner regularly refers to the video presented at trial as "false" evidence. (D.I. 3 at 12; D.I. 8 at 19-20; D.I. 27 at 40). He, however, does not actually suggest that the video itself is a fabrication, but rather just that it was edited when compared to the version obtained in discovery.

determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case.

The Delaware Supreme Court rejected Claim Three on the merits, explaining:

> [Petitioner] asserts that the trial video showed [Petitioner] firing four shots, while the video obtained in discovery showed [Petitioner] firing three shots. The Superior Court determined that [Petitioner] had failed to establish prejudice on this basis, and we agree. [Petitioner] does not claim that he was not the shooter, and the jury accepted [Petitioner's] claim that he shot Baul under extreme emotional distress. In light of that result and considering all the evidence presented to the jury, it is not reasonably probable that the result of the proceeding would have been different—that is, that the jury would have found [Petitioner] not guilty—if the jury had seen a video of [Petitioner] firing three shots at Baul rather than four.

*Prince*, 2022 WL 4126669, at *2.

After reviewing the record, the Court concludes the Delaware Supreme Court did not unreasonably apply *Strickland* in denying Claim Three. The Supreme Court was permitted to reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Petitioner did not deny shooting Baul, but claimed he did so either in self-defense or under extreme emotional distress. The jury accepted his claim of being under extreme emotional distress. Moreover, Petitioner does not deny that, after shooting Baul, he exited the office and fixed his jammed pistol before going back in the office and firing more shots. (D.I. 8 at 18-19). Petitioner's argument that the jury might have accepted his self-defense theory if they had seen the unedited version of the video is entirely speculative. *See United States v. Tilley*, Cr. No. 6-222, Cv. No. 10-691, 2011 WL 673914, at *2 (W.D. Pa. Feb. 17, 2011) ("Speculation and conjecture are insufficient to establish prejudice."). Petitioner has failed to establish that, but for his trial counsel's performance, it is reasonably likely the result would have been different, let alone that the likelihood of a different result is substantial.

17

For these reasons, the Court denies Claim Three for failing to satisfy § 2254(d).

> **2.    Claim Four: Ineffective Assistance of Counsel for Failing to Object to the State's Sentencing Memorandum**

In Claim Four, Petitioner contends that trial counsel provided ineffective assistance for failing to object to the State's sentencing memorandum on the basis that it lacked minimal indicia of reliability.  (D.I. 3 at 13-14; D.I. 8 at 20-23; D.I. 27 at 46-50).  Petitioner presented Claim Four to the Superior Court in his Rule 61 Motion and appealed the Superior Court's denial of the claim to the Delaware Supreme Court.  *See Prince*, 2022 WL 211704, at *11.  The Delaware Supreme Court rejected this claim on the merits.  *See Prince*, 2022 WL 4126669, at *4.  Therefore, Petitioner will only be entitled to federal habeas relief if the denial of Petitioner's claim was either contrary to, or an unreasonable application of, clearly established federal law.

The Delaware Superior and Supreme Courts correctly identified *Stickland* as the standard applicable to this ineffective assistance of counsel claim.  Therefore, the Court must determine if the courts reasonably applied the *Strickland* standard to the facts of Petitioner's claim.

Petitioner identified three details within the sentencing memoranda with which he disputes the reliability: (1) the assertion that Petitioner stopped at a place of former employment between the Maryland and Delaware shootings; (2) the details included involving alleged arguments between Petitioner and Baul prior to the shooting; and (3) the assertion that Petitioner was arrested while in possession of a gun in 2015.  Petitioner claims that trial counsel's failure to object to the inclusion of these details in the sentencing memorandum could have resulted in the trial court using them as a factor in determining or enhancing Petitioner's sentence.  The Superior Court of Delaware, however, clearly articulated that it did not rely on any of these details when determining Petitioner's sentence:

> As to the 2015 gun charge, the only evidence presented is one of [Petitioner's] exhibits.  The exhibit is a heavily redacted interview

of a Maryland police officer, which references the charge being dropped due to a problem with the basis for the stop. Even so, dropping the charge does not speak to whether [Petitioner] possessed a firearm in 2015. It therefore does not vitiate the State's point that he possessed a firearm in 2015 either. There was, then, no prejudice caused by counsel's failure to object to that portion of the memorandum.

As to the timeline suggesting [Petitioner] visited a former employer in Delaware with evil intent, **the Court assigned no weight to it then and sees little reason to give it further credibility now**. He may have visited a former employer—the employees certainly thought he did, although they were surely traumatized by his murderous spree at his former workplace in Maryland that morning—and he may not have. Whether it happened or not does not matter.

More important, the State did not emphasize the gun or the purported visit in presenting aggravating factors. Instead, the State argued [Petitioner] (1) unduly downplayed the seriousness of the offense; (2) abused the victim in the past; and (3) generally lacked remorse. Regardless of the State's arguments, the Court had considerable discretion in choosing an appropriate sentence and exercised its judgment as prudently as possible. The Court did not sentence [Petitioner] based on facts not proven, quite graphically, at trial. Like a defendant's "mitigation report" which sometimes accompanies a sentencing calendar, the State's "sentencing memorandum" is a piece of written advocacy, an effort to persuade the Court to sentence more leniently or harshly. Courts understand this and the hyperbole is always discounted. **[Petitioner] was sentenced for his conduct on October 18, 2017, and not for any other reason**.

*Prince*, 2022 WL 211704, at *11 (citations omitted) (emphasis added).

It being abundantly clear that the Delaware Superior Court did not rely on the information of which Petitioner disputes the reliability, Petitioner has failed to show any prejudice.[8]  Thus,

---

[8]    The Delaware Supreme Court found this claim to be a "reframing" of a prosecutorial misconduct claim that failed on direct appeal for failing to demonstrate that the information lacked a minimal indicia of reliability. *See Prince*, 2022 WL 4126669, at *4. Finding that the Superior Court did not rely on this information in sentencing Petitioner, it is not necessary for the Court to address Petitioner's seemingly meritless claims regarding reliability.

Petitioner has failed to establish that, but for his trial counsel's performance, it is reasonably likely the result would have been different, let alone that the likelihood of a different result is substantial. Accordingly, the Court concludes that the Delaware Superior and Supreme Courts did not unreasonably apply *Strickland* in denying Claim Four.

For these reasons, the Court denies Claim Four for failing to satisfy § 2254(d).

> **D.    Claim Five: Trial Court Erred by Allowing the Prosecution to Present Evidence of Prior Acts but Denied Petitioner the Opportunity to Rebut that Evidence without First Testifying**

In Claim Five, Petitioner alleges that the trial court violated his right to due process by permitting the prosecution to present evidence of Petitioner's prior threatening behavior and dismissed charges, but denying Petitioner the opportunity to present witnesses or evidence to rebut that evidence without first testifying himself.  On direct appeal, Petitioner raised the first part of this claim that the trial court erred "by allowing dismissed or Nolle Prosequi evidence, uncharged threats, [and] hearsay evidence into the State's case in chief."   (D.I. 17-26 at 198-200). Determining that defense counsel did not object to this evidence at trial and, in fact, elicited much of the testimony at issue, the Supreme Court of Delaware applied Rule 8 and reviewed for plain error.  *See Prince*, 2019 WL 3383880 at *3.

The second part of Claim 5 alleges that the trial court denied Petitioner the opportunity to present witnesses or evidence to rebut that evidence without first testifying himself.  In his Opening Brief for Direct Appeal, Petitioner merely stated in his "Questions Presented" section that the trial court abused its discretion by refusing to allow Petitioner to present his case and by forcing Petitioner to either take the stand or concede his case.  (D.I. 17-26 at 198).  Petitioner, however, failed to argue the merits of these claims in his brief.  (D.I. 17-26 at 175-215).  In its Order on

direct appeal, the Supreme Court of Delaware did not explicitly address this issue.[9]  *See Prince*, 2019 WL 3383880.  In his Rule 61 motion, Petitioner raised his claim that the trial court denied him the right to present witnesses and required him to testify before presenting additional witnesses.  (D.I. 17-26 at 326-29).  The Delaware Superior Court found that Petitioner failed to raise this claim on direct appeal and, therefore, the claim was procedurally barred under Rule 61(i)(3).  *See Prince*, 2022 WL 211704, at *3-5.  On appeal, the Delaware Supreme Court agreed.  *See Prince*, *2022* WL 4126669, at *4.

As a result of both parts of Claim 5 having been procedurally defaulted under Delaware state rules, federal habeas review is foreclosed absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed.  *See Campbell*, 515 F.3d at 182; *Monroe*, 825 F. Supp. 2d at 535.  In his original Petition, Petitioner asserts that the "cause" for his failure to brief the second part of this claim on direct appeal was a result of the policies and the resources available in the two detention centers in which he was detained while preparing his brief.  (D.I. 3 at 17-19).  Although inmates have a right to "access to courts," they do not have a "freestanding right to a law library or legal assistance."  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To succeed on an access-to-courts claim, the burden is on an inmate "to establish that the inadequacy of the legal resources made available to him made it

---

[9]     The Court notes that under Delaware Supreme Court Rule 14 "[t]he merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal."  Del. Sup. Ct. R. 14(b)(vi)(A)(3).  "If a party only casually mentions an issue, that cursory treatment is insufficient to preserve the issue for appeal."  *Ploof v. State*, 75 A.3d 811, 822 (Del. 2013), as corrected (Aug. 15, 2013).  Although Petitioner addressed this issue with slightly more detail in his Reply Brief (D.I. 17-17 at 17-19), the initial waiver is not rectified by the inclusion of more detail in a reply.  *See* Del. Sup. Ct. R. 14(c)(i); *see also Lum v. State*, 101 A.3d 970, 972 (Del. 2014) (finding that argument made in reply brief did not rectify waiver of issue not properly raised in body of opening brief).

impossible for him to access the courts to raise his claims." *Jones v. Armstrong*, 367 F. App'x 256, 258 (2d Cir. 2010). Petitioner complains about the adequacy of the resources available to him, such as the availability of persons to assist him, page limitations, and difficulty in obtaining Delaware law while incarcerated in Maryland. Petitioner, however, does not claim he was denied access to the courts. Moreover, as Petitioner was able to fully and properly raise numerous other claims on direct appeal, his assertion about the inadequacy of the legal resources made available to him as to this one specific claim seems disingenuous. Accordingly, Petitioner has failed to show cause for his procedural default of Claim Five.

In the absence of cause, the Court will not address the issue of prejudice. Furthermore, the miscarriage of justice exception to the procedural default doctrine is inapplicable because Petitioner has not provided any new reliable evidence of his actual innocence. Accordingly, the Court denies Claim Five as procedurally barred.

### E.    Claim Six: Cumulative Error

In his final Claim, Petitioner asserts that cumulative errors compromised his right to a fair trial and deprived him of due process. (D.I. 8 at 28-29; D.I. 27 at 62). Petitioner presented a "cumulative error" argument on direct appeal to the Delaware Supreme Court, which denied the argument as meritless. *Prince*, 2019 WL 3383880, at *14. Therefore, Claim Six will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The United States Supreme Court has not recognized the concept of cumulative error. *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019). Because there is no clearly established federal law with respect to a cumulative error argument, it would appear that the Court's § 2254(d) analysis is over, and Petitioner is not entitled to habeas relief for Claim Six. The Third Circuit has, however, recognized the cumulative error doctrine on habeas review, holding that "a cumulative

error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.* 742 F.3d 528, 542 (3d Cir. 2014). Pursuant to the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Fahy v. Horn,* 516 F.3d 169, 205 (3d Cir. 2008). Given the Third Circuit's recognition of the cumulative error doctrine in habeas proceedings, the Court will exercise prudence and review Claim Six.

Here, the Delaware Supreme Court reviewed and rejected each alleged underlying error, and also rejected Petitioner's cumulative error argument without analysis because it found that his claims lacked merit. *See Prince*, 2019 WL 3383880, at *14. As previously discussed, this Court has concluded that Claims One, Two, and Five are procedurally barred, and Claims Three and Four lack merit. Petitioner's procedurally barred claims "have no place" in the Court's cumulative error analysis. *See Cuesta-Rodriguez v. Carpenter*, 915 F.3d 885, 916 (10th Cir. 2019). As Petitioner has not provided anything to demonstrate "actual prejudice" even when Claims Three and Four are considered together, the Court denies Claim Six as meritless.

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In addition, when a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in this case.

## V.    **CONCLUSION**

For the reasons discussed, the Court denies the instant Petition without issuing a certificate of appealability or holding an evidentiary hearing. The Court will enter an Order consistent with this Memorandum Opinion.